v. Muriel Biscond, B-E-S-C-O-N-D, 19-1698. And that is the case in which Attorney Saunders will speak. May it please the Court, Jeremy Sanders of the Criminal Division on behalf of the United States. Your Honors, in seeking review of the case, I would like to ask the panel to ignore what the Supreme Court and this Court have repeatedly emphasized, that the Final Judgment Rule and the Collateral Order Doctrine are to be interpreted with the utmost strictness in criminal cases. This Court should resist her invitation and dismiss this appeal for lack of jurisdiction. Now, the only two questions that are presented by the government's motion and that are before the panel today are whether the District Court's order is a final decision, and if not, whether this Court should expand the narrow confines of the Collateral Order Doctrine to cover rulings declining to consider motions to dismiss that are brought by defendants who refuse to submit to the jurisdiction of the District Court. Ms. Biscond concedes that the answer to the first question is no, and this Court decided over 60 years ago that the answer to the second question is also no. I'm referring, of course, to this Court's decision in United States v. Golden, which we cited in our motion to dismiss, that's at 239 F. 2nd. 877. In Golden, the District Court had before it a motion to dismiss brought by a defendant who was residing in Thailand and had, in the Court's words, quote, not surrendered or been arrested under the indictment. Now, if one were to substitute the country of France for Thailand, that is the exact circumstance present here. And in Golden, the District Court denied the motion to dismiss, holding that a defendant may not, without surrendering himself in absentia, contest the validity of the indictment or its sufficiency. On appeal, this Court dismissed the defendant's appeal from that order, ruling first that the denial of a motion to dismiss is not immediately reviewable, and This Court's jurisdictional ruling in Golden has never been questioned, let alone overruled, and to the contrary, the ever-expanding list of cases where the Supreme Court and the Court of Appeals have refused to expand the collateral order doctrine in criminal cases following Golden to cover denials of motions to dismiss confirm that that holding in Golden is correct and should be followed here. Specifically, I would point to the Sixth Circuit and the Eleventh Circuit's decision in Matarossian and Shalhoub. Now, we think Golden, of course, is sufficient to decide this appeal, but were there any question on that? Those two cases extensively discussed the Consider the Final Judgment Rule and the Collateral Order Doctrine and came to the same conclusion in Golden, that Courts of Appeals do not have jurisdiction to consider appeals from orders denying a motion to dismiss based on the Fugitive Disentitlement Doctrine. We've also cited in our motion to dismiss the only four instances in which the Supreme Court has identified cases in criminal cases where it is allowed interlocutory review of non-final decisions. Those decisions, we know Ms. Beskond is correct that there have been decisions of Courts of Appeals, including this Court, that have found this collateral order doctrine satisfied in other cases. But in the words of this Court, four more common are the criminal cases in which interlocutory appeals have been rejected. And I think that's the basis of, that's due to the fact that the Supreme Court and this Court have recognized repeatedly that the justification for an immediate appeal must therefore be sufficiently strong to overcome the usual benefits of deferring appeal. Now, I'm happy to go through the three elements of the collateral order test. Obviously, the first is not that issue here because the United States agrees that the District Court's order conclusively determined the disputed question. But I think with respect to both the second and the third factors, in criminal cases, the Supreme Court, this Court, other Courts of Appeals have all recognized that the element of the issue requiring it to be an important issue, completely separate from the merits, requires that it be based on an explicit statutory or constitutional guarantee that the trial will not occur. That, for instance, is why the double jeopardy clause, the speech and debate clause, and in this Court's decision in Myers, the protection against the separation of powers, were found to satisfy the collateral order doctrine. That is not the case for the decision here, which is simply a decision that Ms. Biscond qualifies under the definition of a fugitive and then the District Court's discretionary decision to hold, to decline to decide two of the four bases for her motion to dismiss on the grounds that the equities of the fugitive disentitlement doctrine applied in this case. I think it's also important for us to look at the policies supporting the final judgment rule that the Supreme Court has referred to. The first would be minimizing appellate court interference with the numerous decisions the District Courts make. Second, reducing the litigants' opportunity to harass opponents and clog the court. And third, promoting the efficient administration of justice. And we certainly think those policies counsel against a finding that jurisdiction exists here. Number one, it would be certainly inefficient for this Court to spend time and energy deciding questions that may have no practical impact when Ms. Biscond remains a fugitive and fails to submit to the District Court's jurisdiction. And secondly, as the District Court noted here, there is a lack of mutuality in Ms. Biscond's behavior here as she seeks to clog the courts with requests for affirmative relief from the District Court, seeking the benefits of the court but not submitting herself to the burdens of a decision that goes against her. Excuse me, one minute left. In your honors, I will pause now and allow any questions I'm happy to answer. That's very good. Thank you. Judge Walker, do you have any questions? No, no, no, go ahead. Judge Walker, go ahead. Judge Walker? No, no, I pass. Judge Sack? My question is whether, if I recall correctly, Ms. Biscond is not a fugitive in the sense that she has fled the United States, is that right? She's a fugitive in the sense that she's outside of the United States, despite being prosecuted here, is that right? It is correct that she did not flee in the sense she was present in the United States and then left, either. So she's a fugitive from the United States the way I'm a fugitive from France, because I left there a year and a half ago after having seen the Louvre, but I'm a fugitive from France, is that right? No, I think that's not correct, and obviously I would note that the merits of the discussion of whether Ms. Biscond is a fugitive is not before this court on the motion to dismiss, and the government hasn't had an opportunity to submit its brief on that, but I will note that this court in two cases, United States v. Blanco 861 F. 2nd 773 and United States v. Ng 951 F. 2nd 461, both discussed the issue of fugitive that would encompass someone like Ms. Biscond, namely that a person can be said to be a fugitive when while abroad they learn they are under indictment and make no effort to return to the United States and to face charges. I understand this is not before us, but in those two cases, were those citizens of foreign countries? I don't know them offhand, those two cases. I believe with respect to the defendant in Ng, he was a citizen of another country, but I certainly, I wouldn't swear to that. I would note the defendant in Matarossian, the Sixth Circuit decision that was decided just last year, was not an American citizen and had never been president of the United States, and it was alleging circumstances identical to Ms. Biscond here. That's what I want to know. Thank you. Thank you very much, Mr. Sanders. We'll hear from defendant's counsel, Mr. Stasel. Thank you very much, Your Honors, and thank you so much for hearing argument on this motion. May it please the court, my name is Lawrence Stasel for the appellant Muriel Biscond. The government's motion presents a single question. Does this court have jurisdiction under the Collateral Order Doctrine to review the district court's admitted and unprecedented expansion of the Fugitive Disentitlement Doctrine? The answer is yes, because all of the requirements of the Collateral Order Doctrine are met. As the government just conceded, there's no dispute that the lower court's order conclusively determined the disputed question. But it is important to note that the disputed question that Judge Seibert resolved was whether the Fugitive Disentitlement Doctrine applied to Madam Biscond. This is not a situation where this appeal is one seeking review of the denial of the motion to dismiss, which is a statement that during his brief and its important distinction. It's also not disputed that the requirement that Judge Seibert's ruling on the Fugitive Disentitlement Doctrine is unreviewable on appeal after a final judgment is met. Because if Madam Biscond has to travel to the United States to appeal Judge Seibert's ruling on her fugitive status, the debate over her fugitive status, alleged fugitive status, would be moot. So failing to review Judge Seibert's order now would defeat the right to review it ever. And neither Madam Biscond or any foreign, unextraditable defendant could ever obtain review of a ruling on the Fugitive Disentitlement Doctrine, no matter how much it departed from existing Second Circuit authority. The Collateral Order Doctrine also requires the application of the Fugitive Disentitlement Doctrine to raise an important issue separate from the merits of the case, and both of those are met here. Application of the doctrine to foreign defendants who have not fled the jurisdiction, and in fact, in Madam Biscond's case, of course, as Judge Sack pointed out, she is a French citizen, has lived her entire life in France, has never fled anything. The charges in the indictment occurred six years before the indictment, and at no time respective to the issues in the case was Madam Biscond in the United States. It raises important issues of a defendant's right to access to the court, to mount a defense, and in this instance, to challenge whether the indictment violates the presumption against extraterritoriality, all without having to leave one's country and travel thousands of miles away to face sure detention just for the right to challenge the indictment. Here, the appeal is particularly important, and the issues presented are particularly important because Judge Seibert conceded she was, quote, expanding the Second Circuit's Fugitive Disentitlement Doctrine, and that's important because the United States Supreme Court in Deagon held that expansion of the Fugitive Disentitlement Doctrine by judges without legislative approval is improper. An additional important factor here is that the merits of the case, I'm sorry, separate from the merits of the case, is the balancing of prosecutorial power abroad with the sovereignty of foreign nations, and of course, here, France, for example, did not see fit to prosecute Madame Bisconde. Finally, the question of whether Judge Seibert erred regarding the Fugitive Disentitlement Doctrine is indeed separate from the merits of this case, consistent with the requirements of the Collateral Order Doctrine. Simply put, whether Madame Bisconde is a, quote, fugitive does not go to her guilt or innocence, and as set forth in Mitchell v. Forsythe, the Supreme Court made it clear that the test is sought to be appealed is, quote, conceptually different from the merits of the case. Here, whether Madame Bisconde is allegedly a fugitive does not go into the issues as to whether she, in fact, violated the Commodity Exchange Act as alleged in the indictment. Indeed, the Fugitive Disentitlement Doctrine precludes, by definition, decisions on the merits, which further confirms the separateness, and obviously, the fact that there may be some overlap doesn't defeat the requirement under the Collateral Order Doctrine, as Mitchell v. Forsythe made clear. So, we submit that all three requirements of the Collateral Order Doctrine are met, and therefore, Appellant Bisconde should be permitted to pursue her appeal in this case. The government at argument in its brief relies heavily on the Golden case, and let me just address that briefly, because that case, in fact, is highly distinguishable. That is a case from 64 years ago where the Fugitive Disentitlement Doctrine was neither discussed nor at issue. It involved a case involving a citizen who moved to Thailand and renounced his citizenship, and the motion to dismiss involved whether appellate issues could be raised in absentia. That case involved a motion, a denial of a motion to dismiss. As pointed out, Madame Bisconde is not appealing her motion to dismiss or a motion to dismiss. There was no meaningful discussion in Golden of the Collateral Order Doctrine. There is a two-sentence reference to the, quote, offshoot rule of Cohen. It's unclear at all what rights the defendant was asserting, how they were separate from the facts of the indictment, and, in fact, what the, quote, offshoot rule even meant. So, under these circumstances, we contend that the Golden case does not preclude, in any sense, review in this case, and, in fact, is hardly on all fours, as Mr. Sanders would suggest. I'll pause at this point. I know my time is nearly at an end, to see if the Court has any questions. Judge Walker? No? No questions? Judge Sack? Yeah. The, excuse me, your adversary referred to a recent decision by a sister circuit, I don't know, I think it's a six, perhaps, as being also indistinguishable. Is it indistinguishable, Mr. Stasel, or how would you distinguish it? The cases that are referred to are primarily the Martirosian cases Mr. Sanders suggested, a Sixth Circuit case, and the, I'm sorry, and the Shalhoub case. They are distinguishable on numerous grounds, but I think the most important ground is the importance prong of the collateral order doctrine test. In both of those cases, the Court held that the defendant did not have the, quote, right not to be labeled a fugitive, and that was the essence of the discussion of the importance doctrine, or the importance standard. Here, as we've said, the importance is very clear, and that has to do with the right of a foreign, non-extraditable defendant, without suffering the punishment of having to travel to the United States and leave everything behind to challenge an indictment and have access to the courts to do so. And those are clearly highly important rights under Cohen, too important to have forever unreviewable. And I also wanted to point out that Mr. Sanders continues to assert that this case is not a, those cases nor this case is one involving a right not to be subject to trial. And that is true, but that ignores the second category of criminal cases where collateral order appeals are permitted, and that are those where the issue would become moot if it had to wait for final reviews, such as stack the boil and sell the United States. So in those instances, we think that the non, the sister courts relied on are not at all, are obviously not binding and not particularly persuasive. Mr. Stasiel, I'm going to give Mr. Sanders an opportunity for 30 seconds or a minute by way of reply, but I want to ask you a question. If we agree with you, what order or decree do you want us to enter? In other words, what is it that you want and what is it that you would proceed to do if, if you prevail here and we deny the government's motion? Well, if you deny the government's motion, we would, we would have our appeal on the merits heard separately. And that would include whether in fact, Judge Seibert aired in her application of the fugitive disentitlement doctrine to this case. At that point, if, if we were on appeal, what we would be seeking would be a remand for further proceedings on the motion to dismiss as to those issues that were not addressed, because there were numerous issues that were not addressed by Judge Seibert. But also on, on the appeal on the merits, if your honors deny the government's motion, we also have sought or have suggested that pendant appellate jurisdiction would be, would be advisable with respect to two issues. Thank you. And Mr. Sanders, do you have a bit of a reply? Thank you, your honor. I appreciate it. I'll start with the last point that Mr. Seichelt said, which is his notation that says this appeal by Ms. Biscons is asking this court to exercise pendant appellate jurisdiction over the other issues that Judge Seibert did decide. I just want to draw the court's attention to United States versus Ferguson, 246 F third 129. This court held there is quote, no pendant appellate jurisdiction in criminal cases. And that follows directly from the Supreme Court's rule in Abney. So I would note that in answer to the question about what Ms. Biscons hopes this court will do, the vast majority of her brief focused on two issues that this court would not have the ability to decide in any event. And the last thing I will say is the Supreme Court had noted in digital equipment that the identification of some interest that would be irretrievably lost has never satisfied to satisfy the collateral order doctrine. There are no other questions. We would ask that the Biscons appeal be dismissed for want of jurisdiction. Thank you. Thank you. Thank you both for excellent arguments. We will reserve decision and you will hear from us as soon as practicable.